UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCEE KUZNIAK,

    Plaintiff,                                 Case No. 1:18-cv-1128

v.                                            Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her application for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of April 10, 2015. PageID.42. Plaintiff identified her disabling conditions as anxiety, irritable bowel syndrome (IBS), hypertension, depression, hip pain, insomnia, bowel dysfunction, rectal prolapse, arthritis, hormone dysfunction, panic attacks. PageID.403. Prior to applying for DIB, plaintiff completed the 12th grade and had past employment as a food preparation worker and hospital cleaner. PageID.56. An administrative law judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on February 20, 2018. PageID.42-56. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's application for disability benefits failed at the fourth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 10, 2015, and that she meets the insured status requirements of the Social Security Act through September 30, 2021. PageID.45. At the second

step, the ALJ found that plaintiff had severe impairments of: degenerative disc disease of the lumbar spine; degenerative joint disease of the hips; status post perineal proctosigmoidectomy; status post cholecystectomy; depression; and anxiety. PageID.45. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.46.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she requires convenient access to a restroom, which is defined as a restroom on the premises and within reasonable access. Additionally, the claimant is limited to performing simple, routine tasks, and she cannot perform any fast-paced work. The claimant can also have no more than occasional interaction with the public.

PageID.49. The ALJ also found that plaintiff was able to perform her past relevant work as a food preparation worker and as a hospital cleaner. PageID.55. The ALJ found that this work does not required the performance of work-related activities precluded by plaintiff's residual functional capacity (RFC) and that she is able to perform this work as generally and actually performed. PageID.56. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from April 10, 2015 (the alleged onset date) through February 20, 2018 (the date of the decision). PageID.56.

### III. DISCUSSION

Plaintiff set forth three issues on appeal.

**A. The ALJ committed reversible error when he improperly excluded unidentified evidence from the record after asserting that 20 C.F.R. § 404.935(b) had not been met.**

At the administrative hearing held on September 19, 2017, plaintiff requested and was granted a 14-day extension of time to submit additional medical records to the ALJ.

4

PageID.137-138. Plaintiff's counsel identified the records as from Metro Health GI, West Michigan Pain, and possibly "ENT records." PageID.137. The ALJ addressed this additional evidence in the decision stating that:

> After the hearing, the record was held open for more than fourteen days to allow for the submission of additional medical evidence which the claimant's representative had identified more than five days prior to the hearing (Ex. B23E; B24E; B25E; B26E). This evidence has since been received, reviewed, and admitted into the record (Ex. B14F; B15F). Following the submission of this evidence, the claimant also attempted to submit additional medical evidence that had not previously been noted or proposed for admission. I decline to admit this additional evidence because the requirements for allowing the late submission of additional written evidence set forth in 20 CFR 404.935(b) have not been met.

PageID.42.

Plaintiff contends that the ALJ declined to admit additional, unidentified medical evidence. In describing the error, plaintiff states in her brief that "Plaintiff, counsel, and every other reviewer of this record, is left to guess what the source and nature of the excluded evidence consists of." Plaintiff's Brief (ECF No. 11, PageID.783). Plaintiff goes on,

> One could guess that it is from Ms. Kuzniak's three-day emergency hospitalization from December 27, 2017 through December 29, 2017, but one cannot be certain because the ALJ fails to identity the excluded records with any specificity.

*Id*. In her brief, defendant points out that

> There is only one post-hearing submission that preceded the ALJ's decision but was not admitted to the record: the notes from Plaintiff's three-day hospitalization for perforated appendicitis [from December 27, 2017 to December 29, 2017]. (PagID.80-108) [sic].

Defendant's Brief (ECF No. 14, PageID.803) (footnote omitted).

The record reflects that plaintiff signed an authorization and consent for records to Spectrum Blodgett Hospital on January 2, 2018 – about three months after the ALJ's extension expired. PageID.80. The records attached to that request included the December 2017 hospital records. PageID.80-108. As discussed, the ALJ entered the decision denying benefits on February

5

20, 2018, and declined to admit additional medical evidence "that had not previously been noted or proposed for admission." PageID.42. Plaintiff's counsel should know the nature of the late evidence which counsel himself submitted to the ALJ. Counsel's claim of ignorance is not persuasive. Accordingly, plaintiff's claim of error is denied.[1]

> **B. The ALJ failed to acknowledge fecal incontinence and chronic diarrhea as a severe condition and failed to include the associated limitations in the residual functional capacity (RFC) determination posed to the Vocational Expert (VE).**

Plaintiff contends that despite unrebutted evidence that she suffers from fecal incontinence and chronic diarrhea, the ALJ did not determine these conditions to be either severe, or non-severe, impairments. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). As discussed, the ALJ found that plaintiff had a number of severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of the hips; status post perineal proctosigmoidectomy; status post cholecystectomy; depression; and anxiety. PageID.45.

Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id*. "The

---

[1] Based on the parties' briefs, the evidence of plaintiff's December 2017 hospitalization is among the post-hearing medical records that plaintiff seeks to have the Commissioner consider on a sentence-six remand. *See* discussion in § III.C., *infra*.

fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).

Here, plaintiff points out that the ALJ did not classify her fecal incontinence or chronic diarrhea as either severe impairments or non-severe impairments. However, the ALJ discussed these gastrointestinal conditions at length in developing plaintiff's RFC noting that:

> The claimant has also reported experiencing symptoms of irritable bowel syndrome and loss of bowel control since undergoing perineal proctosigmoidectomy surgery in July 2008 and cholecystectomy surgery in August 2008 (See Ex. B1A; B10F/10; B12F/62, 69).

PageID.51.

The ALJ addressed plaintiff's condition during the relevant time period as follows. In June 2015, plaintiff reported to her primary care provider Randall Clark, M.D., that she was experiencing frequent bowel movements up to eight times per day. PageID.51. Dr. Clark advised plaintiff to try using Imodium to address her symptoms. *Id*. In November 2015, plaintiff was referred to physician assistant Jennifer Pray, a provider at a colorectal surgery specialist office, "for further evaluation of her reports of loss of bowel control with an average of seven to ten bowel movements per day despite attempting treatment with Imodium." *Id*. Ms. Pray assessed plaintiff with fecal incontinence, referred her to physical therapy, and recommended using Metamucil. *Id*. At that time, plaintiff was "extremely reluctant to try (this medication or Imodium) because she feels that nothing will help." *Id*. Ms. Pray also recommended "InterStim therapy." *Id*. "The record does not establish that the claimant attended subsequent physical therapy, that she pursued InterStim treatment, or that she sought any further direct treatment for her gastrointestinal symptoms until June 2016, a period of approximately seven months." *Id*.

In June 2016, plaintiff saw a health care provider, who referred her to gastroenterologist Ryan Hamby, D.O. *Id*. The doctor evaluated plaintiff, performed a

7

colonoscopy. *Id*. Biopsies showed no significant pathologic findings and no evidence of microscopic colitis. *Id*. Based on these results, Dr. Hamby recommended a high fiber diet and treatment with Lomotil. *Id*. Plaintiff also saw health care providers to alter medications in October and November 2016. *Id*.

After reviewing this evidence, the ALJ concluded:

> Following these medication adjustments, the record does not establish that the claimant has pursued any further direct treatment for her gastrointestinal symptoms, a period of more than one year. At her September 2017 hearing, the claimant testified that she was continuing to experience poor bowel control despite taking anti-diarrhea medications on a daily basis.

*Id*.

While the ALJ did not address plaintiff alleged impairments of fecal incontinence and chronic diarrhea at step two, he addressed these conditions in addressing plaintiff's severe impairments of status post perineal proctosigmoidectomy and status post cholecystectomy. PageID.45. Given this record, the ALJ's failure to identify these two conditions as severe impairments is legally irrelevant. *See Anthony*, 266 Fed. Appx. at 457. Accordingly, plaintiff's claim of error is denied.

> **C.    In the alternative to the errors listed above, plaintiff seeks a remand under sentence six of 42 U.S.C. § 405(g) to consider evidence from her treating physician and from her two emergency hospitalizations – one between the hearing and the decision, the other in August of 2018 – both relating to her diseased digestive system.**

Plaintiff seeks a sentence-six remand to address records which were not part of the administrative record reviewed by the ALJ. The records relate to two hospitalizations and a doctor's opinion. The first hospitalization was from December 27, 2017 through December 29, 2017 (PageID.80-106). This occurred while plaintiff's claim was pending *i.e.*, between her administrative hearing (September 19, 2019) and the issuance of the ALJ's decision (February 20,

2018). The second hospitalization occurred some months later, from August 3, 2018 through August 4, 2018 (PageID.62-77). In addition, plaintiff seeks a sentence-six remand to review a letter written by her treating physician several weeks after the ALJ denied her claim. PageID.38.

When a plaintiff submits evidence that has not been presented to the ALJ, the Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir. 1988). Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id*. "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

"A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). To show good cause a claimant is required to detail the obstacles that prevented him from entering the evidence in a timely manner. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter v.*

9

*Commissioner of Social Security*, 479 Fed. Appx. 713, 725 (6th Cir. 2012). In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711.

The records from the first hospitalization in December 2017 were new, having been generated after the administrative hearing. Plaintiff has demonstrated good cause for failing to present these records based on the timing of the hospitalization. This was a medical emergency which occurred after the administrative record was closed but before the ALJ issued his decision. Although the second hospitalization occurred some months later, it involved similar symptoms. For those reasons, plaintiff has demonstrated good cause for presenting this new evidence.

However, the Court does not find good cause for the submission of the post-decision opinion letter by plaintiff's treating physician, Dr. Clark. On March 30, 2018, Dr. Clark, signed a "to whom it may concern" letter which addressed plaintiff's frequent bowel movements. PageID.38. Plaintiff has presented no evidence of obstacles that prevented her from obtaining an opinion from Dr. Clark prior to the issuance of the ALJ's decision. A claimant's failure to obtain otherwise-available medical evidence before the hearing does not constitute the "good cause" under 42 U.S.C. § 405(g). *See Oliver v. Secretary of Health and Human Services*, 804 F.2d 964, 966 (6th Cir.1986) (finding that the claimant did not have good cause for failing to obtain additional medical tests in advance of his administrative hearing before the ALJ). Furthermore, Dr. Brown's letter was generated after the denial of plaintiff's claim. Under such circumstances, good cause does not exist for plaintiff's failure to present this new evidence to the ALJ. *See Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) (explaining that the good cause requirement would

be meaningless if every time a claimant lost before the agency he was free to seek out a new expert witness who might better support his position).

Finally, the Court must determine whether the records of the two hospitalizations were material. The first hospitalization involved plaintiff's report of pain, "with CT findings of pericecal inflammation vs. stump appendicitis". PageID.89. This involved inflammation at the site of plaintiff's prior appendectomy, which was treated with antibiotics at the hospital. PagteID.95. The second hospitalization involved plaintiff's report of abdominal pain with an "unremarkable" CT scan. PageID.66, 70. Plaintiff has not demonstrated that either of her hospitalizations were related to her severe impairments at issue in this matter. In this regard, plaintiff has presented no argument with respect to materiality. Plaintiff has failed to satisfy the burden of proof as to materiality, because she has not shown that "there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. Accordingly, plaintiff's request for a sentence-six remand is denied.

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: March 27, 2020        /s/ Ray Kent
                             United States Magistrate Judge